FILED

# United States District Court

JUN 27 2007

___MIDDLE___ DISTRICT OF ___ALABAMA___

~~CLERK~~
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA

UNITED STATES OF AMERICA

v.

AZUCENAS GARCIA and

JUAN UBALDO-VIEZCA

**CRIMINAL COMPLAINT**

CASE NUMBER: 2:07mj62-SRW

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __June 26, 2007__ in __Montgomery__ county, in the __Middle__ District of __Alabama__ defendants did, knowingly possess with intent to distribute cocaine hydrochloride in an amount in excess of five (5) kilograms, in violation of Title __21__ United States Code, Section __841(a)(1)__

I further state that I am an __ABI Agent__ and that this complaint is based on the following facts:
                                          Official Title

See attached Affidavit which is incorporated by reference herein

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

JUNE 27, 2007                                           at    MONTGOMERY, ALABAMA
Date                                                          City and State

SUSAN RUSS WALKER, U.S. MAGISTRATE JUDGE      _____
Name & Title of Judicial Officer                  Signature of Judicial Officer

# AFFIDAVIT

Affiant, Joe Herman, being duly sworn deposes and says:

1. He is an Alabama State Trooper Corporal, assigned as an agent for the Alabama Bureau of Investigation's Narcotics Operations Service, and detailed to the Major Investigation Team of the High Intensity Drug Trafficking Area Task Force (HIDTA), which are both located at the Investigative Operations Center in Montgomery, Alabama. Agent Herman is cross-designated and federally deputized by the United States Drug Enforcement Administration (DEA) which empowers him with authority under Title 21, United States Code. He has twenty-two years of law enforcement experience in which the past thirteen years have been extensively directed in narcotics investigations. The facts and information contained in this affidavit are based on Agent Herman's personal knowledge, the knowledge of other law enforcement officers, and the Defendants' statements.

2. On Tuesday, June 26, 2007, at approximately 1:50pm, Alabama State Trooper Will Barnes stopped a white Ford Expedition sport utility vehicle (SUV) pulling an empty flatbed trailer for speeding at the 168th mile marker on Interstate 65 in Montgomery County, Alabama. As Trooper Barnes approached the vehicle, he immediately noted an overwhelming smell of air freshener coming from inside the SUV.

3. Trooper Barnes identified the driver of the SUV as **Azucenas Garcia**. The passengers in the vehicle were identified as **Juan Wbaldo** and **Garcia's** seventeen (17) year old son, David Ruiz. Based on Barnes' personal observations, information learned via the radio regarding the driver and **Garcia's** and **Ubaldo-Viezca's** inconsistent statements, Barnes sought and obtained both verbal and written consent to search the

SUV and trailer from the driver, **Garcia**. Trooper David Colston also responded to the scene to assist. According to Trooper Barnes, it was at that point **Ubaldo-Viezca** told Trooper Barnes that he was a confidential source working for the U. S. Drug Enforcement Administration (DEA).

4. During the roadside search, Trooper Barnes noticed that the right rear bolts of the wheels on the trailer exhibited tool marks indicating that they had been recently removed. Additionally, Trooper Barnes inspected the axles of the trailer and noted that the bolts underneath the rear axles also exhibited tool marks. After noticing the tool marks on the axle bolts, Trooper Barnes conducted an echo test of the trailer's axles which indicated the likelihood of objects concealed inside the axles. Barnes subsequently determined that a further and more thorough search was needed and with **Garcia's** consent, the SUV and trailer were then taken to the Alabama State Trooper auto shop. **Garcia** accompanied the officers to the auto shop. **Ubaldo-Viezca** and the juvenile followed the officers in the SUV to the auto shop. While en route, Trooper Barnes was able to observe **Ubaldo-Viezca** talking on his cell phone.

5. While en route to the auto shop, **Garcia** again verbally reiterated her consent to search the SUV. Upon arrival at the State Trooper auto shop, **Ubaldo-Viezca** again approached Barnes and stated that he was a confidential source for DEA. Barnes asked **Ubaldo-Viezca** if there were any narcotics in the vehicles and **Ubaldo-Viezca** then told Barnes that there were eight kilograms of cocaine in the axles of the trailer.

6. Trooper Billy Fulmer, a certified drug detecting canine handler, who had arrived at the State Trooper auto shop, used his drug sniffing dog to "sniff" both the SUV and trailer. That exercise resulted in Fulmer's dog alerting for the presence of a narcotics odor on the

trailer. State Trooper auto shop mechanics dismantled the axles of the trailer which revealed bundles of cocaine secreted inside both axles. The search revealed eight (8) packages in each axle for a total of sixteen (16) packages. A subsequent field test was positive for the presence of cocaine with a gross weight of 20.2 pounds. During the search by the canine, Garcia, who was in the front seat of the patrol vehicle was seen making calls on her cell phone and receiving at least one call.

7. After discovering the cocaine, Trooper Fulmer advised **Ubaldo-Viezca** of his rights and Trooper Barnes advised **Garcia** of her rights. Both **Ubaldo-Viezca** and **Garcia** acknowledged their rights and waived their right to remain silent. Moreover, Agent Herman who had been notified of this incident arrived at the auto shop and initiated an investigation.

8. After Agent Herman again verbally advised **Ubaldo-Viezca** of his rights, **Ubaldo-Viezca** told Agent Herman in a preliminary interview that he was a DEA confidential source who had been working a major investigation for Texas DEA agents. **Ubaldo-Viezca** told Agent Herman the cocaine in the trailer axles was destined for South Carolina. **Ubaldo-Viezca, Garcia,** and Ruiz were transported to the Montgomery High Intensity Drug Trafficking Area (HIDTA) office for further interviews.

9. At the HIDTA office, Herman again advised **Garcia** of her rights using a standard rights form. **Garcia** acknowledged understanding her rights, waived her right to remain silent and agreed to answer questions. Additionally, Immigration and Customs Enforcement Agent David Henderson advised **Ubaldo-Viezca** of his rights using a standard rights form. **Ubaldo-Viezca** acknowledged understanding his rights, waived his right to remain silent and agreed to answer questions.

10. According to **Garcia**, she met **Ubaldo-Viezca** in Savinas, Mexico on Saturday, June 23, 2007, where she took possession of the trailer. **Garcia** stated that **Ubaldo-Viezca** offered her $6000.00 to assist him in smuggling the cocaine across the border into the United States and then transporting the cocaine to South Carolina. **Garcia** added that this was her fifth time since October 2006 that she has assisted **Ubaldo-Viezca** in transporting cocaine to South Carolina. **Garcia** added that her 17 year old son, David Ruiz, had no knowledge of the cocaine.

11. **Ubaldo-Viezca** stated that he and **Garcia** picked up the trailer in Monterrey, Mexico and brought the trailer into the United States while being followed by a Hispanic male in a separate vehicle. **Ubaldo-Viezca** said that initially he did not know there was cocaine hidden in the trailer until they arrived in George West, Texas. **Ubaldo-Viezca** said that in George West, Texas, he and **Garcia** stopped and were met by the person following them. It was at that time, according to **Ubaldo-Viezca**, that the unidentified Hispanic male told **Ubaldo-Viezca** there was cocaine in the trailer. **Ubaldo-Viezca** said that he was instructed to deliver the cocaine to an unknown location in South Carolina and upon his arrival somewhere on Highway 26 in South Carolina; he was to call a telephone number provided to him by the source of the cocaine who **Ubaldo-Viezca** identified only as Carlos.

12. Agent Herman spoke with DEA Agent Norris Rogers, the name of the agent provided by **Ubaldo-Viezca**. Agent Rogers said that he was familiar with **Ubaldo-Viezca** and **Ubaldo-Viezca** had previously been a DEA informant approximately ten years ago, but was deactivated and no longer being utilized by him or DEA. Agent

Rogers also told your Affiant that he knows of no current investigations with which **Ubaldo-Viezca** is assisting.

13. Based upon the foregoing, your Affiant states there is probable cause to believe that **Azucenas Garcia** and **Juan Ubaldo-Viezca** possessed with intent to distribute cocaine hydrochloride in an amount in excess of five (5) kilograms, in violation of Title 21, Section 841(a)(1), United States Code.

Joe Herman, Agent
Alabama Bureau of Investigation


Sworn to and subscribed before me this 27th June, 2007.


Susan Russ Walker
United States Magistrate Judge