```
           IN THE DISTRICT COURT OF THE UNITED STATES
             FOR THE MIDDLE DISTRICT OF ALABAMA
                       NORTHERN DIVISION

UNITED STATE OF AMERICA,     *
                             *
     PLAINTIFF,              *
                             *
     V.                      *  CR No. 2:07cr139-WKW
                             *
JUAN UBALDO-VIEZCA,          *
                             *
     DEFENDNAT.              *
                             *
```

## MOTION TO SUPPRESS STOP, SEARCHES AND SEIZURES[1]

Comes now the Defendant, Juan Ubaldo-Viezca, by and through undersigned counsel, Jeffery C. Duffey, and pursuant to the Fourth Amendment, Fifth Amendment, and Equal Protection Clause of the U. S. Constitution moves this Court for an Order suppressing any and all evidence seized by the Government as a result of a vehicle stop. This evidence includes any statements, physical evidence and/or records obtained as a result of the stop and search of the vehicle/trailer, of the person of defendant and of defendant's residence, effects and vehicles.

### Facts

1. On or about June 26, 2007, Alabama State Trooper Will Barnes made a traffic stop of a vehicle driven by co-defendant

---

[1] This motion is the same or similar (with modification) as that filed by co-defendant Garcia on August 23, 2007(Doc. 43), and later withdrawn by Garcia(Doc. 71).

Azucena Garcia. The vehicle was towing a trailer. Ms. Garcia is a United States citizen and an individual of Hispanic or Latino origin and was driving a vehicle with Texas license plates. Defendant Juan Ubaldo-Viezca was a passenger in the vehicle. Mr. Ubaldo is a non citizen legally residing in the United States, and is of Hispanic or Latino origin. The son of Ms. Garcia was also in the vehicle.

    2. After retrieving Ms. Garcia's driver's license, Trooper Barnes placed her in the patrol car and explained to Ms. Garcia the reason for the vehicle stop. (The other two parties were confined to their vehicle.) Trooper Barnes then began a license check of Garcia, and for no apparent reason began a "Block HITA" check.[2] While waiting for the requested information, Trooper Barnes without cause interrogated Ms. Garcia on matters unrelated to the vehicle stop. Defendant Ubaldo-Viezca's detention and seizure continued during this interrogation.

    3. During this investigation, Trooper Barnes asked Ms. Garcia questions regarding matters of: (1) Ms. Garcia's employment; (2) what the parties' reasons were for using the public highways; (3) the amount of money the parties had in their possession; (4) the relationship between the parties;

---

[2] Block HITA is a database regularly used by immigration officials to obtain information related to illegal alien status.

(5) whether the parties were engaged in criminal conduct and if they had any past criminal history; (6) marital status, personal information and etc. After more than 20 minutes of interrogation, Trooper Barnes then issued Ms. Garcia a warning citation for speeding.

    4. However, after the warning ticket was issued, Trooper Barnes did not release the parties. Instead, without any cause, Trooper Barnes further interrogated Ms. Garcia on additional matters unrelated to the stop; detained, seized and interrogated defendant Juan Ubaldo-Viezca on matters unrelated to the stop; and obtained "consent" from Ms. Garcia to search the vehicle. After finding no contraband, the Trooper continued to detain and seize the parties, transported the vehicle and parties to a trooper station for a further vehicle search; conducted further interrogation of the parties and obtained "consent" from Juan Ubaldo-Viezca to search his home in Texas.

    5. Defendant Juan Ubaldo-Viezca has great difficulty in understanding English. Spanish is his native language. It is unknown at this time the extent of any language difficulties with Garcia.

    6. Pursuant to that search, a large quantity of what is alleged to be cocaine was located in the vehicle trailer.

Other items were seized from Juan Ubaldo-Viezca's home or property in Texas. Ms. Garcia and Juan Ubaldo-Viezca were arrested and subsequently charged with possession with intent to distribute cocaine. The instant case is an indictment arising out of those charges.

## Argument

**I. Trooper Barnes' Interrogation on Matters Unrelated to the Basis for the Stop Was an Improper Seizure.**

7. When police ask investigative questions under the guise of "routine questioning," *Miranda* warnings are required. United States v. Glen-Archila, 677 F.2d 809 (11th Cir. 1982).

8. Trooper Barnes' conduct shows that he was fishing for information unrelated to the stop, upon which he could possibly develop cause for other police activity. Because the alleged "routine questioning" was a guise for a police investigation, *Miranda* warnings were required. United States v. Glen-Archila, 677 F.2d 809 (11th Cir. 1982). As no *Miranda* warnings were provided prior to this police interrogation, any statements given in response to the questioning must be suppressed. Additionally, any police activity (i.e. the searches) based upon these un-*Mirandized* questions must also be suppressed.

**II. The Eleventh Circuit's Holding in <u>United States v. Perkins</u>, 348 F.3d 965 (11th Cir. 2003) and <u>United States v. Boyce</u>, 351 F.3d 1102 (11th Cir. 2003) Specifically Prohibited the Questioning and Detention of the Parties.**

9. The Fourth Amendment guarantees "the right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." <u>U.S. Const. Amend IV.</u> While not all police-citizen encounters trigger Fourth Amendment scrutiny, a traffic stop is a limited seizure within the meaning of the Fourth Amendment, and it is analogous to an investigative detention. <u>United States v. Perkins</u>, 348 F.3d 965,969 (11th Cir. 2003). Therefore, the legality of such stops is analyzed under the standard articulated in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). <u>Terry</u> held that such stops require "an officer [to] have an objective, reasonable suspicion of criminal activity," before seizing (or continuing to seizure of) an individual. <u>Id</u>. Therefore, if the officer has cause to believe an individual has committed a traffic infraction, the individual can be stopped and seized while the traffic infraction is investigated and activities related to the traffic stop are concluded. <u>United States v. Purcell</u>, 236 F.3d 1274, 1277 (11th Cir. 2001).

10. Drivers and their vehicles can be detained after a valid traffic stop while a "license check" or "criminal history check" are being conducted. United States v. Boyce, 351 F.3d 1102 (11th Cir. 2003). However, after an individual has been issued a citation or warning ticket, any prolonged detention of an individual without "reasonable suspicion" of other criminal activity is a violation of the Fourth Amendment. Boyce, 351 F.3d at 1107; Perkins, 348 F.3d at 970; United States v. Pruitt, 174 F.3d 1215, 1219 (11th Cir. 1999). See also: 32-1-4, Ala. Code 1975 (upon issuance of a traffic citation the officer shall forthwith release the person from custody).

11. Whether an officer has a "reasonable suspicion" of criminal activity sufficient to justify such an investigatory stop is determined based on the totality of the circumstances, and from the collective knowledge of the officer involved in the stop. United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990). However, "reasonable suspicion" may not be based on the officer's hunch, but requires that the police officer be able to point to specific and articulable facts which reasonably warrant the intrusion. Id. (citing, Terry v. Ohio at 1879); See also, United States v. Mikell, 102 F.3d 470, 475 (11th Cir.

1996)(police are required to articulate some minimal, objective justification for the stop). The fact that the driver is nervous, has out-of-state tags and/or provides slightly inconsistent statements does not create "reasonable suspicion" upon which a further detention is warranted. Perkins, 348 F.3d at 965; Pruitt, 174 F.3d at 1219-1221; Tapia, 912 F.2d 1367, 1370.

    12. The defendant alleges that Trooper Barnes had no "reasonable suspicion" upon which he could base any further detention of the parties. Id. Because the further detention was prohibited by the Fourth Amendment, any questioning, answers and consent that stem from the further detention must be suppressed/excluded. Perkins, 348 at 969 (citing United States v. Terza do-Madruga, 897 F.3d 1099, 1112 (11th Cir. 1990)).

    13. When a vehicle is pulled over for a traffic stop, the passenger as well as the driver is seized for Fourth Amendment purposes. Brendlin v. California, 551 U.S. \_\_\_\_\_, 127 S. Ct. 2400, 168 L. Ed. 2d. 132 (2007).

**III.  The Equal Protection Clause Prohibits the Racially Motivated Police Practices (Profiling) Engaged in by Trooper Barnes.**

   14. "Racial profiling of any kind is anathema to our criminal justice system." United States v. Leviner, 31 F.Supp.2d 23,33 (D.Mass 1998). "We [the United States Supreme Court] of course agree... that the Constitution prohibits selective enforcement of the law based on consideration such as race... [T]he constitutional basis for objecting to intentionally discriminatory application of the law is the Equal Protection Clause." Whren v. United States, 116 S.Ct. 1774(1996).

   15. The Eleventh Circuit has not specifically addressed or adopted a method of analyzing and remedying vehicle stops that are in violation of the Equal Protection Clause. However, guidance can be obtained from other circuits' jurisprudence and analysis of similar facts and the Eleventh Circuit's opinions issued in civil cases. The First Circuit has held that when challenging car stops as pretextual and in violation of the Equal Protection Clause, "in order to prevail...[a defendant] must present evidence that he was treated differently from similarly situated non-Hispanic motorists and that the action taken against him was motivated, at least in

part, by his race. Flowers v. Fiore, 359 F.3d 24,35 (1st Cir.2004). More specifically, to show a violation of the Equal Protection Clause, a party must prove that the actions of the government official had a discriminatory effect and were motivated by a discriminatory purpose. Chaves v. Illinois State Police, 251 F.3d 612,635 (7th Cir.2001).

16. To show "discriminatory effect," the defendant must show that he was a member of a protected class and that members of the non-protected class were treated differently. Id. This can be done by showing how specifically named people (protected v. non-protected) were treated differently or through the use of material of relevant statistics. Id.; See also Int'l Bd. Of Teamsters v. United States, 97 S.Ct. 1843 (1977). To show "discriminatory intent" the defendant must show that the government official purposefully acted in a manner that would have an adverse affect upon an identifiable group. McClesky v. Kemp, 481 U.S. 279,298 (1979); See e.g., Osburn v. Cox, 369 F.3d 1283 (11th Cir. 2004). Because of evidence of discriminatory intent is often intangible (i.e., they don't exist as a written or audio recording or discriminatory intent) one must look at the facts and circumstances surrounding the government official and his actions.

17. After a warning ticket or traffic citation is issued, unless a police officer has a "reasonable suspicion" based upon objective facts that an individual is engaged in legal wrongdoing separate from the basis of the stop, the person/vehicle must be released. United States v. Boyce, 351 F.3d 1102 (11th Cir. 2003); United States v. Perkins, 348 F.3d 965 (11th Cir. 2003). See also: 32-1-4, Ala. Code 1975 (upon issuance of a traffic citation the officer shall forthwith release the person from custody).

18. Defendant is not is possession of any documentation or recording in which Trooper Barnes affirmatively expresses his discriminatory intent to stop Hispanic or Latino persons. However, based upon undersigned counsel's experience, counsel has good faith belief that the parties ethnicity led to the vehicle stop being used as a pretext for the investigation of other criminal activity. Therefore, the stop of the vehicle is in violation of the Equal Protection Cause. The stop and the fruits of the stop should therefore be suppressed.

## Conclusion

19. It is contended the questioning of defendant was in violation of the Fifth Amendment, there was no Fourth Amendment justification for the subsequent detainment of defendant, the vehicle/trailer search or the consent searches,

and because the stop and subsequent activities thereto were in violation of the Equal Protection Clause, any and all evidence, information or statements obtained as a result thereof must be suppressed.

20. Defendant requests an evidentiary hearing on this motion.

Respectfully submitted this 9th day of December, 2007.

s/Jeffery C. Duffey<br>
Jeffery C. Duffey<br>
Attorney for defendant

Law Office of:
Jeffery C. Duffey
600 South McDonough Street
Montgomery, Alabama 36104
Phone: (334) 834-4100
Fax: (334)834-4101
Bar No.: ASB-7699-F67J
Email: Jcduffey@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing was served upon:

AUSA Clark Morris
U.S. Attorney's Office
P.O. Box 197
Montgomery, AL 36101-0197

by electronic service on this 9th day of December, 2007.

s/Jeffery C. Duffey<br>
Jeffery C. Duffey