IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:07cr139-WKW |
| | ) | |
| JUAN UBALDO-VIEZCA | ) | |

## RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

**COMES NOW** the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and files its response to the Motion to Suppress filed by Defendant Juan Ubaldo-Viezca, as follows:

### I.   FACTS

On June 26, 2007, Trooper Will Barnes stopped a Ford Expedition towing a flatbed trailer for speeding. As the Trooper approached the Expedition, he smelled the strong odor of air freshener. Azucenas Garcia was driving the vehicle. Also in the vehicle was Garcia's 17 year old son and Juan Ubaldo-Viezca. Garcia claimed ownership of the Expedition, but could provide no registration, title, bill of sale or insurance on the Expedition. The trailer was registered to Garcia. As the Trooper was doing the necessary computer searches prior to issuing the speeding ticket, Trooper Barnes asked Garcia and Ubaldo where they were going. Garcia stated that they were going to North Carolina. Ubaldo said they were traveling to South Carolina. Garcia further told Trooper Barnes that she and Ubaldo were in a relationship and that she had been with Ubaldo for three to six months. Ubaldo told Trooper Barnes that he and Garcia were business partners and that he had known her for years. When Garcia

talked about Ubaldo, she referred to him as "Tony." Trooper Barnes asked Garcia if she knew "Tony's" last name and she replied that she did not. Moreover, Garcia and Ubaldo claimed to be traveling to purchase cars to take back to Mexico. However, the trailer that they were pulling was not a car hauler and could not hold more than one car. According to Trooper Barnes, he doubts that the trailer could even handle the weight of one car when driving the distance from either North Carolina or South Carolina to Mexico.

Based on Trooper Barnes' observations, as well as on Garcia and Ubaldo's inconsistent statements, Trooper Barnes sought and received oral and written consent to search the vehicle from Garcia. As the Troopers began the search of the vehicle, Ubaldo asked to speak with Trooper Barnes, away from Garcia's son. Ubaldo then told Barnes that he was working undercover for the DEA and Texas Department of Public Safety as a confidential informant. Ubaldo further stated that he was getting really close to the people that law enforcement were after and that he had to get to South Carolina. Ubaldo went on to say he was working with DEA agent Norris Rogers out of Houston[1].

As Troopers searched the vehicle, Trooper Barnes noticed that the right rear bolts on the wheels on the trailer showed tool marks indicating that they had recently been removed. Upon further inspection, Trooper Barnes saw that the bolts underneath the rear axle showed tool marks. Trooper Barnes conducted an echo test to determine if the axle was hollow or if the axle may contain objects. Based on the echo test,

---

[1] When agents contact Norris Rogers, Rogers informed them that many years ago, he worked with Ubaldo as a confidential informant, but has had no contact with him in years.

2

Trooper Barnes decided to transport the car to the Alabama State Trooper Auto Shop for a more thorough search. Ubaldo actually drove the vehicle to the auto shop. At the auto shop, Ubaldo again approached Trooper Barnes and told Trooper Barnes that he (Ubaldo) was a confidential informant for the DEA and that he was currently working an undercover operation. Trooper Barnes asked Ubaldo if there were any drugs in the trailer. Ubaldo stated that there were eight (8) kilograms in the axle of the trailer. Soon thereafter Troopers found the eight kilograms in the axle of the trailer.

## II.    ARGUMENT

### A.    UBALDO HAS NO STANDING TO CONTEST THE SEARCH OF GARCIA'S FLATBED TRAILER

While Ubaldo does not address the issue of standing to contest the search in his motion, the government contends that Ubaldo has no standing and, thus, no hearing is required. The defendant bears the burden of proving a legitimate expectation of privacy in the areas searched. Rawlings v. Kentucky, 448 U.S. 98 (1980); United States v. Cooper, 133 F.3d 1394 (11th Cir. 1998). Fourth Amendment rights, are personal, and only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search. United States v. Cooper, 203 F.3d 1279, 1284 (11th Cir. 2000); citing Rakas v. Illinois, 439 U.S. 128, 133-134 (1978). The court's initial inquiry should focus on whether the defendant established in his motion to suppress that he possessed a reasonable expectation of privacy. Id. Moreover, where a defendant in a motion to suppress fails to allege sufficient facts to establish standing, a court may dismiss a suppression motion without an evidentiary hearing. Id. at 1285. Ubaldo does not address standing in his motion. Because the defendant bears the burden to prove standing and because there are no

facts alleged in the suppression motion to determine standing, this motion is due to be denied without hearing.

If the court chooses to address the issue of standing even though the defendant has failed to allege facts to establish a reasonable expectation of privacy, the government maintains that the defendant has no standing to contest the search of the trailer. Mere presence as a passenger within a vehicle, alone, is not sufficient to establish standing to contest a law enforcement search of the vehicle. Rakas v. Illinois, 439 U.S. 128, 148 (1978). Defendant was a passenger in the Ford Expedition. Garcia, the owner and driver of the Expedition, was also the owner of the trailer being hauled by the Expedition. Ubaldo did not own the Ford Expedition, nor the flatbed trailer. No drugs were found in the Ford Expedition. The only narcotics found were in the axle of a flatbed open trailer. One could contrive an argument that Ubaldo, as a passenger in the vehicle, had a reasonable expectation of privacy in such vehicle. However, there is no question that Ubaldo had no reasonable expectation of privacy in a flatbed trailer that he did not own, did not possess and did not occupy. Because Ubaldo had no standing, this motion is due to be denied.

B.  UBALDO HAS NO STANDING TO CONTEST THE DETENTION OF GARCIA

Ubaldo next argues that because Garcia was unlawfully questioned and detained prior to the search, the search was unlawful and all fruits of this search should be suppressed. However, Ubaldo has no standing to contest the detention of Garcia. Ubaldo can only contest the detention of Ubaldo. United States v. DeLuca, 269 F.3d 1128 (10th Cir. 2001)(Defendant has standing to contest the lawfulness of his own detention). Because Ubaldo has no standing to contest the detention of another

person, the motion is to be denied.

    C.    <u>TROOPER BARNES' QUESTIONING OF GARCIA AND UBALDO WAS NOT IMPROPER</u>

Ubaldo further asserts that the Trooper questioned or interrogated Garcia on matters unrelated to the traffic stop. However, when an officer is looking at a driver's license or waiting for a computer check of registration, he lawfully can ask questions- even questions not strictly related to the traffic stop. <u>United States v. Hernandez</u>, 418 F.3d 1206, 1209 (11th Cir. 2005). Thus, during the license and registration check, Trooper Barnes could ask questions not strictly related to the traffic stop. Moreover, Garcia had no registration, bill of sale or title to the Expedition. Trooper Barnes had a duty to investigate who actually owned the Expedition and the trailer before issuing the ticket. The questioning of Garcia that occurred while Trooper Barnes was investigating the ownership of the Expedition, investigating the ownership of the trailer, running necessary driver's license, criminal history and BLOC HIDTA checks. It was thus lawful.

Ubaldo asserts that Miranda warning should have been given, presumably to him and Garcia prior to their being questioned regarding the traffic stop. The right to Miranda warnings attaches when a custodial interrogation begins. <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute "custodial interrogation" for purposes of the Miranda rule. <u>Berkemer v. McCarty</u>, 468 U.S. 420 (1984). Further, the non-threatening nature of a Terry stop removes it from the dictates of Miranda. <u>United States v. Acosta</u>, 363 F.3d 1141 (11th Cir. 2004). Finally, while Ubaldo has no standing to contest Garcia's consent, Miranda warnings are not required to validate a consent search. <u>United States</u>

5

v. Hall, 496 F.2d 670, 674 (5th Cir. 1973).[2]  Because Miranda warnings were unnecessary, this argument fails.

### D. TROOPER BARNES DID NOT UNLAWFULLY DETAIN THE DEFENDANT

Ubaldo contends that Trooper Barnes unlawfully detained Garcia after all license checks and criminal history checks were completed.  Ubaldo further states that Trooper Barnes did not have reasonable suspicion of criminal activity to justify the further detention.  However, after all the computer checks were completed, Trooper Barnes asked for consent to search, Garcia gave the consent and Trooper Barnes searched based on Garcia's consent.  There was no unlawful detention.

However, even if the court finds reasonable suspicion necessary, Trooper Barnes had the necessary reasonable suspicion of criminal activity.  The Supreme Court has defined reasonable suspicion as "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant (an) intrusion." Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).  Based on Trooper Barnes' observations and conversations with Garcia and Ubaldo, Trooper Barnes had reasonable suspicion of criminal activity and thus, the detention and the search were lawful.

### E. GARCIA AND UBALDO WERE NOT THE VICTIMS OF RACIAL PROFILING

While Ubaldo attempts to make an argument that Garcia was stopped for speeding because she was Hispanic, Ubaldo admits that he is not in possession of

---

[2]In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit rendered prior to the close of business on September 30, 1981.

documentation showing Trooper Barnes' discriminatory intent to stop Hispanics. Defense counsel makes the hollow assertion that based on his experience, he "has a good faith belief that the parties ethnicity led to the vehicle stop being used as a pretext for the investigation of other criminal activity." (Doc. 84, ¶ 18)  However, The Supreme Court and the Eleventh Circuit have rejected the use of pretextual-stop analysis and concluded that ulterior motives will not invalidate police conduct based on probable cause to believe a violation of the law occurred.  Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004); citing, Whren v. United States, 517 U.S. 806 (1996); United States v. Holloman, 113 F.3d 192, 194 (11th Cir. 1997).  Garcia was stopped for speeding.  Thus, Trooper Barnes had probable cause to believe a violation of law occurred and this motion is due to be denied on these grounds.

### III.  CONCLUSION

Based on the forgoing, Ubaldo's motion to suppress is due to be denied.

Respectfully submitted, this the 20th day of February, 2008.

> LEURA G. CANARY
> UNITED STATES ATTORNEY
>
> /s/ A. Clark Morris
> A. CLARK MORRIS
> Assistant United States Attorney
> 131 Clayton Street
> Montgomery, Alabama 36104
> Telephone: (334) 223-7280
> Fax: (334) 223-7135
> E-mail: clark.morris@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:07cr139-WKW |
| | ) | |
| JUAN UBALDO-VIEZCA | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Jeffery Duffey.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ A. Clark Morris
A. CLARK MORRIS
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Telephone: (334) 223-7280
Fax: (334) 223-7138
E-mail: clark.morris@usdoj.gov